Last weekend, thousands of Cubs fans used their bank cards in mass transit to go watch the first World Series games in Wrigley Field since the 1940s. These commuters took the bank cards out of their pockets and tapped it against the card reader at the turnstile. The card reader analyzed embedded circuitry inside the card and almost instantly assessed whether to keep the turnstile locked or to open it up and let these commuters go watch their Cubs in action. This technology was not available just three years ago. Now we're here today because the district court thought that this type of gating system was too abstract to be patented. We think that was in error and I'd like to consider the claims of the 617 patent to illustrate this. Now it's undisputed that for decades... In your brief, you go at great length to illustrate the problem that needed to be solved or the problem that you feel the patent solved. That's timing at the gate to keep people from waiting at the gate. How does the use of the credit card under the claims of the patent, the credit card itself, how does that speed up that process? Well, there was also another problem, connectivity. Sometimes there's a lack of connectivity, but this speeds it up because it happens right at the entry gate, at the turnstile. So it's one thing to say, I mean, for decades people could use their bank cards at a ticket machine or at a ticket booth. They would have to wait in line to pay and they could do it that way. And the conventional way, as the patent explains and as the Saunders prior art explains, the conventional way for the transaction to be evaluated was to hop through several networks, the acquiring bank, the issuing bank, things like that. What these claims have is evaluation locally. The norm was to do it remotely through several networks, but here in the claims an unconventional approach is to evaluate the transaction locally. The inventors bucked the conventional wisdom on this. In fact, the prior art taught away from local processing. If you look at the Saunders patent application, at paragraphs three... Under the patent, the bank card is used only for identification. Is that right? That's right. So it's not used for the financial transaction itself. I mean, money's not deducted from the card. That's right. That's one of the errors the district court made when finding that these claims were directed to paying for your ride with a credit card. So the use of the card is mostly for identifying the person. Yes, and the claims require evaluating the card. They check it against what's called a white So the inventors bucked the conventional wisdom in where the evaluation occurred. Saunders, at paragraphs three, eight, 13, and 21, says, do not evaluate the transaction locally. He said, if you do, if you store information there, it will be insecure and susceptible of being hacked. Saunders says you better do that evaluation, store the information far away at the distant remote networks belonging to the banks. But the inventors wanted to speed up the process, so they checked it at the white list locally. The district court acknowledged that this sped up the process. The district court... So suppose that everybody with a blue shirt is standing at the turnstile and just looking at the blue shirts and saying, go in, go in, go in, and you, red shirt, no. And isn't that what the bank card does? It's just simply identifying the person that's standing there at the turnstile. Well, there were several problems to be solved. Yes, it's being used as a means of identification. It seems to me that the novel thing that your patent claims is the use of a credit card for a number of other reasons. Everybody's got one. You don't have to carry multiple cards. You just use one card. Well, there are three ways in which... I mean, this was a problem that the transit sector struggled with for a long time. That's undisputed. And the inventions here had three benefits. They solved... There were problems that were recognized, how to do it quickly enough, how to secure the data. And the inventions here took unconventional approaches to doing all that. Let's look at the last assertion you just made, unconventional approaches. When I look at the claims and what the claims are directed at, you're looking at a bank... I'm looking at claim one of the 003 patent. You're looking at a bank card terminal. I'm assuming when I go to the grocery store and I slide a card through that little machine, that's a bank card terminal? It's not being used to regulate access to a transit system, but it's a type of terminal. Okay. All right. And then you go on, you have a processing system, a bank card reader, a processor, a memory, access controller. Aren't these all conventional? Standing alone in isolation, these components were not novel. But Diamond VDR and DPR... So you're saying the ordered combination of the use of this is the novelty? Yes. The combination of these elements in an unconventional way provides an inventive concept, and also under prong one, improved on existing technological processes. Could I respond to a couple of things your honor noted? I mean, first of all, the setting matters here. When people are at the grocery store or when you're at the restaurant waiting to pay your bill at the restaurant, you can wait the seconds that it takes, but there's a unique need for speed when you're rushing to catch your train. So at the entry gate, at the turnstile, you can't wait all that time. So the setting matters here. There was a unique need for speed here. What is it that provides the speed? Okay. The speed is provided as in Amdocs, the decision from two days ago. The choice of architecture to do this locally instead of the conventional way of doing it in the claims. Well, the claims cover this assembly. To me, doing it locally, certainly I understand that. And it seemed to me that doing it locally, the absence of having to go through a network or having to wait for the internet and all of the things that you have to go through if you charge something at a grocery store or at a restaurant. The question is, where is that in the claims? We don't claim the effect. We don't think we have to claim. You don't claim the absence of a network or a local processor or comparator at a local place or something of that sort? Well, the evaluation takes place. We claim in the system claims, the architecture necessary to do the local evaluation. In the method claims, the actions take place. We don't claim the result or the effect. The novelty of what you're claiming is the use of the bank card. I mean, it seems to me that's the focus of the... When I asked the question, what are the claims directed to? The first thing it takes me to, and it seems that the focus of the claims is the use of the bank card for the identification. The use of a bank card to control access to a transit system. Okay, to control access. For example, when I'm at the airport and I go up to the kiosk and I'm flying American Airlines and I put my credit card in there, my credit card, it gives me access to the American Airlines system. It doesn't mean I've paid for anything or I've done anything, but it's already given me the access to the system. That's really the novelty of your pen, isn't it? Well, I think there are three improvements that the combinations provide here. One of them that we've been focused on is speed, but that's a function of where the evaluation takes place. That was important in BASCOM. That was important in Amdocs, but also the inventors here improved on the conventional process in other ways too. Another question is what will the process be? What will we compare the card against? In prior art, that defendant's site, the systems checked credit cards against blacklists. These are lists of bad, invalid cards. That's what the defendant's prior art does. The inventors here recognize that blacklists are of limited value. They only check historically bad cards. Modern fraudsters, and the specification discusses this, modern fraudsters have cards at their disposal that can generate a new number each time. Let me ask you something. You said something that's of big interest to me. You said that the claims don't identify a result. Not the system claims. Not the system claims. All you've done is the claims identify the functions. No, not the functions. I think this case is very different from many of the cases this court has addressed recently where the problem was claims in issue only claimed the function or the result, and not the how-to. Here, we don't claim the result or the effect. EDR Holdings didn't claim the effect of keeping the user's attention. Amdocs, two days ago, didn't claim the effect of avoiding bottlenecks. These claims claimed systems. They told you how to do it, and that had a benefit and a result. Here, we claim the architecture, the components, the hardware components that achieve these results. They make the conventional process faster. But those components are claimed as being coupled to each other to perform that result, but it doesn't necessarily say directly coupled or locally coupled or coupled without a network or coupled without delay. Correct? Well, the claims we've been talking about- They could be coupled. They could be cross-town. They could have to go through a network. There could be all kinds of delay associated with that. I'm trying to focus on the claim language and whether the claim language gives you a hook to hang on to make the argument you're making. Well, the claims are to a bank card terminal, and I think any fair reading of that- I mean, no one identified as a claim construction issue whether a bank card terminal could be going to avoid the latency problem that you're trying to overcome. I think bank card terminal has a known and standard meaning that no one has disputed, and the patents illustrate what it's talking about. Let me check. I realize you're into your rebuttal, but- Can I get to a third benefit? Answer Judge Lowe's question. Yeah, sure. Well, go ahead briefly, because I want to get into a little bit of a discussion about step one of Alice that may take some time, so go ahead and ask your question. Okay. Well, the other way that the claims improved on the conventional existing processes was data security. The other thing that the defendant's prior art has is they store blacklists, and they don't talk about data security at all. These are only bad cards, so they didn't need to protect them, and they don't mention that challenge at all. The one reference that talks about the security of the data that will be stored locally is Saunders, and Saunders couldn't figure out how to secure historical card information. That's why he said you can't do this locally. You have to do it through remote distant networks, but many of the claims here require hashing, a security mechanism that will protect the information stored at the bank card terminal, so we made it more secure, faster, and more robust with the whitelist. All right. Let me direct your focus to Alice step one. Step one, determine whether the claims are directed to an abstract idea. The courts are having a terrible time trying to figure out how to do that. The risk in all of this is that determining whether the claims are directed to an abstract idea, in many ways, seems to be a totally abstract, arbitrary process. So what do you think the test should be in determining whether a claim is directed to an abstract idea? Let me try to break it down into two parts to that. First, what's the proper way to characterize a claim? Here, the district court characterized it as using a bank card to access mass transit. Is that the right characterization? How many things in the claim do you overlook or ignore? Do you see where I'm going? You have an idea? Maybe you could say, well, this claim is directed to gaining access to a transit system. That's ultimately what it's all about. What level do we go in step one in identifying what the claim is directed to? Yeah, I agree. Obviously, it's a vexing problem, and litigants and the court, I think, is struggling with that. It was mentioned in the MDOT's opinion two days ago, how do we do this? Almost every one of our opinions wrestles with this issue, and I don't think we have yet to in this case, and the district court characterized it a few ways. Your Honor mentioned one. It also said paying with a bank card or paying for a transit ride with a credit card. We think under- In your opinion, evidence is the problem that I'm having. Yes. How do we figure this out? One of the ways, I think the internet patents case talks about trying to figure out what the patent as a whole, you look at the prior art and you look at the attempts to improve on the prior art. In this case, we think the district court, however it was characterized, really reduced the claims to over-generalized gists. Commuters had been paying- And that's what I'm trying to get at. What's the test we use to determine, well, have you over-generalized or have you not over-generalized? Well, I think a thing to recognize here is that commuters were paying with credit cards or debit cards, with bank cards for rides for decades. I'm not talking specifically about this case. I'm trying to formulate a test. You were writing the test. You're going to write the opinion that says to determine what the claims are directed to for purposes of Alice step one, you do the following. I think it's a little bit holistic and you need to look at the specification, what it says about the problems it was trying to solve, the prior art that it was trying to improve on, and you have to look at the claim language. I think it's necessarily a little bit of a holistic approach to try and find the basic character. And in this case- Doesn't McCrow set out a way to look at step one of Alice, the McCrow decision? To talk about the, find the improvements and how the pattern would- That's part of it. And also defining whether the claims are directed to how you get to your desired result, which in your case is eliminating the latency problem at the turnstiles, and whether those limitations themselves remove the claims from embracing an abstract idea. Yes, the claim elements here- You yourself define your pattern as a method to enter into a transit system. Or maybe- Directly. To do it quickly. You have an expression and an abstract idea when you say that. When you say it's a way of paying to enter the theater, it's a way to pay to get into the train or on the bus. That's paying for entry is an abstract idea. What is it in your claims? How are your claims directed to elements that begin to remove the pattern from embracing that abstract idea? Well, all of the claim elements working together, these hardware elements enable the transit system to make it happen. We have the interface that at some point has downloaded the historical data, the whitelist in this case, of known good cards, different than what's in the defendant's prior art. Then there's the processor sends those to the memory. The memory stores this historical whitelist of good known cards. Then the bank card reader will evaluate the currently presented card. This is all at the terminal gate. The bank card reader does that, is connected to the processor. The processor is able to take that information and evaluate it with the memory. These are all coupled together. The memory is also coupled to the processor, which is coupled to the second interface, which controls access. Do you disagree with the district court's characterization of the claims as either using a bank card to access mass transit or paying for a subway or bus ride with a credit card? Yes, because those all encompass even just paying at a ticket machine and waiting online to do that. That's not what these are about. These are about... What more would you add in terms of what the district court should have characterized these claims? I think the first step, characterization, is controlling access to the transit system by enabling the use of the bank card directly at the terminal gate, not with a vendor, not at a ticket machine. You can see this in the abstract. You can see this in the field of the invention. Do the claims say that? Yeah, the claims are too... terminal for regulating access. Where does it say directly? It says at the terminal, but that could be through some connection or through some network. Well, the bank card terminal is... You can do extra steps. I don't think DDR Holdings, for instance, prevented the user from also going to the third party website, but the claims contained the steps where at initiation of the hyperlink, the composite website, you could have added on steps and kept going. In Amdocs yesterday, you could have... That's the wrong case. But you can always add extra steps. They don't preclude you from taking those steps. That was true in DDR Holdings. You mentioned earlier, and let me just to clarify, it seems to me that the focus of the claims are on the use of the bank card. The use of the bank card directly at the terminal gate to control access to the system, the transit system. What the bank card does is just say, this is Jim Reyno standing there. That's all the bank card does. And everything else happens there locally. I get that. Right. It's being used... This pen is focused on the use of the bank card. It's the use of the bank card that really clears up the latency issue. The evaluation of the bank card locally... All it's doing is evaluating for identification. Yes. It's not about payment. Right. It's not about payment. Right. But the use of the bank card locally speeds up the process. The use of the white list is an advantage over the prior art because it's more potent than the black list that was in the conventional prior art. And the hashing in the 617 patent and many of the dependent claims in the 003 patent makes it more secure than was in the prior art. Faster, more robust, and more secure. Okay. Okay. We got it. We'll give you some time for rebuttal. Thank you very much, your honors. Mr. Reid. Good morning, your honors. May it please the court. The fundamental difference between this case and the cases that were discussed by appellant here is that there is no improvement to the functioning of any technology. There's no improvement to the functioning of the generic computer and processor cited. There's no improvement to the functioning of the credit card or the credit card equipment. There's no improvement to the functioning of any mass transit equipment or devices. As district court accurately held, these claims simply add conventional components to an abstract idea with some additional language thrown in, applying it to a particular field of use, the field of mass transit. Mr. Reid, what do you say to my question about how we decide how to characterize claims in assessing Alice Step 1? What's your test? That's also a difficult question. I know it's been raised before. It seems to me the entire process of assessing whether a claim is directed to an abstract idea itself is abstract. I would agree with that, your honor. And wholly arbitrary. That's what I'm having trouble with. In these cases, you know, everybody involved, the advocates, the judge, the court of appeals, we're all trying to make a judgment as to whether a claim is directed to something that is abstract or not. And we're using all sorts of rationalization. And maybe that's what it ultimately comes down to. But it just strikes me as being so terribly arbitrary that it's almost not useful. Maybe we should just bypass Step 1 and say, well, it's directed to so and so. And let's just look to see whether there's any structure that adds something that's not common. Well, some of the more recent cases certainly have lent themselves to such an interpretation. They do seem to be conflating the two steps in the ALICE framework in terms of whether the improvement to functionality is a Step 1 consideration or whether it's a Step 2 consideration, contrasting ANFISH with the BASCOM decision. You have any insights as to a better articulation of how we evaluate Step 1? Frankly, your honor, I do not. I think that the patent provides clues. I think that Mr. Purnip is correct in that specification may provide some clues as to the direction of the claims. But in the claim language itself has to be evaluated. But in terms of articulating a broad test, I don't have the answer for you, Judge Lynn. I'm sorry. I wish I did. All right. Well, in this case, Mr. Purnip says that the district court's characterization of these are paying for a subway or bus ride with a credit card. And he says, no, it should include something like using a bank card directly to access mass transit or locally to access mass transit. What's your response to that? Our response is the district court got it right. As your honor intimated in your questions, the language of the claims doesn't add that directly or local requirement to this abstract idea. In fact, in their brief themselves, Appellant characterizes it as these patents enable an open transit system that allows commuters to use a bank card at a physical gate or terminal to enter a mass transit system. I'm not seeing an operative distinction in terms of an abstract idea between how they articulated it there and how the district court articulated it as using a bank card to access mass transit. And in particular, the later two patents, not the 03 and 617, but the 390 and 816 patents, they made no claim that there's any local requirement in those particular patents. Let me ask you another question relating to Step 1. Sort of the second phase or aspect of Alice Step 1, in my understanding, is that after you characterize the claim, in this case, using a bank card to access mass transit, then you decide, well, is that directed to an abstract idea? And I could see if the claim is characterized as a method of hedging or method of providing escrow accounts or multiplication, division, processing, storing, scanning. These are all abstract ideas. Here it's using a bank card to access mass transit. What's abstract about that? What's abstract, Ron, and this goes to the Anfis decision, is that that idea, the idea of standing alone, using a bank card to access mass transit, is not improving any technological function. There's no improvement. I'm not talking about improvements. I'm not getting into Step 2 as to whether there's something in the claim that adds. Trying to focus on Step 1. What's abstract about, in the sense of setting up a hedge fund or providing escrow accounts or multiplying or storing or processing, those are all abstract concepts. I'm having trouble with just saying that using a bank card to access mass transit is abstract. And to help your thinking on this, what if the conclusion was, well, using a token to access mass transit. Certainly that would not be abstract, would it? Well, Your Honor, I think you're still talking about a concept, an abstract concept, and what takes it from abstract... You think if a claim were characterized as being directed to using a token to access mass transit, you think that would be an abstract idea? Yes, Your Honor, because you're talking about a concept. You're not talking about a particular functionality. That means no matter what the claim is, if you characterize it in terms of its functionality, bingo, you've passed Alice Step 1, because it's just the functionality and nothing more. I'm not sure that's correct, Your Honor, in the sense that it depends on what you characterize and what that is. If what you're characterizing and what the concept is, is a well-known business practice, and the case law has said that that then falls on the abstract side of the line. If what you're characterizing is the idea that you determine in the claim actually represents an improvement to technology akin to ENFISH, the self-referential table in ENFISH, but the court found, well, the self-referential table, that's what it's directed to, but the self-referential table improved a technological process. It improved computer technology. In this case, it seems to me that there's nothing that's happened to the bank card to improve it. That's absolutely correct. It's just a bank card. It's just a bank card, and there's nothing that improves the computer components. There's nothing that improves the terminal. The claims are directed to the use of a bank card to enter into... To access mass transit. There's nothing in the claims that says, what is it that it's doing to the bank card? How are any type of limitations being placed on narrowing down the bank card itself? It's just the use of a bank card. The use of a bank card as an identifying token. That's correct, Your Honor. So with that abstract idea, then moving on to Alice Step 2, since I'm running low on time, there is no improvement to technology. Nothing inventive beyond that abstract idea in these particular claims. Now they pointed to a couple of improvements, supposed improvements, namely speed and their briefing speed and this idea of not writing data to the credit card. I'd like to address each of those. With respect to speed, and he spent most of his time talking about this speed improvement, this idea of a local list, and he says it's an improvement over remote authorization. That analysis does not go back far enough. When you're talking about credit cards and the concept of a credit card, credit cards predate remote authorization. Remote authorization was something that actually was implemented in the 70s and 80s and much later in the credit card development. When credit cards were first introduced back in the 1950s and 60s, local verification was how credit cards worked. The clerk received the credit card. It was subscribed to lists from the bank issuers of card numbers, and every time you received that credit card, the clerk was presented with that credit card. They would take that credit card, they compare it to this book they received, this list they received, and based on that comparison, they would approve or disprove the transaction. What this patent proports to do is take what that clerk was doing back in the 50s and 60s and put them on a mass transit terminal, put them in a field of use of mass transit. The only speed improvement that's being realized is being realized by taking that concept, by taking that action that was done by a clerk in the 50s and putting it on a generic computer. That's where the speed improvement comes. Alice has said, and Bilski has said, and a number of cases have said, just putting it on a general computer does not make it non-abstract. Now with respect, again, that only applies to the first two patents, the 003 and 617 patents. We didn't hear it today, but they've also raised the issue of the benefit of the 816 and 390 patents, which they don't even claim have any local components, and nor can they, given the claim language. The 816 and 390 patents, the supposed benefit is this inability to write data to the card. Well, as your honors know, the inability to write data to a credit card is an inherent characteristic of a credit card. So they're saying nothing more about the credit card and saying that's a benefit than it uses a credit card to access mass transit. And if you can just say credit card, or if you can just identify a characteristic of a computer that's inherent... Just to be sure, there's nothing being written on the credit card. This patent does not require writing anything on the credit card. That's correct, your honor. No use of a credit card requires writing on a credit card. It's an inherent characteristic. And so if identifying that characteristic... A credit card merchant, like Visa or MasterCard, they can authorize somebody to actually write data on the credit cards. They could, in terms of authorizing a merchant, an actual sales clerk, I suppose it's theoretically possible, but there's certainly no... But they don't do it. They don't do it. Right. And so when I say inherent characteristic, I mean inherent characteristic of credit cards as they're actually used. Theoretically, you could do that. But in terms of credit cards, how they're used, it's an inherent characteristic. And if pointing out an inherent characteristic is sufficient to bestow patent eligibility, then we're right back with the problem we had in Alice and Mayo, where they said patent eligibility should not be a question of the draftsman's art. So I want to talk briefly on a couple other points. You said that the setting matters here. Well, the case law actually largely disagrees with this comment about the setting matters here. They said that applying an abstract concept to a particular field of use is not relevant. This goes all the way back to Fluke. They tried to say, well, we're not just taking this formula, we're applying it to alarm system monitoring. And Fluke made clear, no, just applying the abstract idea to a field of use does not make it any less abstract. And that's been repeated in Billisky. So the fact that they're taking this abstract concept and they're applying it in the field of mass transit does not add anything to the inquiry before the court today under section 101. And finally, I'd like to address one issue that was raised in the briefing, especially the reply brief, this idea of preemption. We were criticized by our take on preemption. And I think the court's decision has made clear that preemption is not the test of patent eligibility. The decision in Ariosa made that clear. Preemption, of course, is properly characterized as a concern. It's certainly the concern underlying the exemptions in the Supreme Court's 101 jurisprudence. An appellant here alleges a handful of alleged non-preemptive uses. But again, that's not as scarcely relevant here. Dating back to Fluke, again, going back to Fluke, the Supreme Court found claims that were ineligible despite the fact that they, quote, do not, however, cover every conceivable application of the formula. Similarly, in the OIP Technologies case, they identified roughly a dozen different supposed non-preemptive uses of the abstract idea. And the courts there also said that the claims do not preempt all price optimization or may be limited to a particular setting, do not make them any less abstract. The same analysis applies here. Just because they've identified, in this case, three or four of what they allege are non-preemptive uses of this abstract idea that would not be covered by the claims does not make that idea any less abstract. So to sum up, Your Honors, the district court, and what I would characterize as a very well-reasoned and very thoughtful opinion, got this one right. These claims are directed to an abstract idea and there's nothing inventive whatsoever about the routine components and processes used in each to implement the abstract idea. We ask this court to affirm the district court's decision on all counts. Thank you. Thank you. Wait two minutes. Okay, I'd like to respond to a couple of points. First, we did not take an old brick-and-mortar process here and just automate it. The process was already networked and computerized. There wasn't an employee behind the scenes rifling through 10 million paper records looking to see if the commuter's card was approved. It was already networked and computerized and we made it better. I want to also point out what happened before you were allowed to use a credit card or bank card at the gate. You had to use a traditional mechanism like a transit ticket or pass, but that meant you had to carry around a separate thing and find it in your pocket, in your bag. The benefit of using bank cards here is that everyone's got them. You don't need to carry around something else. That was something the transit sector wanted, but it provided its own set of problems. Do you agree you haven't done anything to the bank card? Not to the bank card, but the use of the bank card presented problems. One of them is speed because the way you do it is you've got to hop through the distant networks. The patents talk about that. Saunders talks about that. We solved that problem. You solve the problem by bringing the information that gives approval to entry. And you localize that. Yes. With the bank card, all it does is say, this is Jim Rayna and there's the other process that figures out if I got enough money or not to get in. Yes, but the location of where evaluation occurs is becoming a recurring theme here. In Amdocs two days ago, the court approved of a patent because one of the unconventional things was where the processing took place near the data sources, like here. In Bascom, where the evaluation occurred, conferred a benefit. It was done remotely, the internet filtering. If it was when it was local, users could get into the computer and change the settings. In Amdocs, the claims themselves go to the distributed locations and then describe the function and the limitations with respect to distributed location. That's the focus of those claims. The focus of your claim is on the bank card. You're not claiming the ability or the function of a payment. No, it's not about payment. Your patent is focused on use of a bank card. It's focused on the terminal that allows one to use a bank card to access the system. I would just say about Amdocs, it didn't claim avoiding bottlenecks. It just claimed the architecture where the benefit was avoiding bottlenecks elsewhere in the system. We here claim an architecture that is faster, more secure, and more robust than what defendants point to to try and show that we were conventional. Okay. Thank you. All right. Thank you very much. Our next case is Inration.